■ AUTOMATED TICKET SYSTEMS, LTD., Respondent, v JOHN D. QUINN, as Director of the New York State Division of the Lottery, et al., Appellants.— Appeal from a judgment of the Supreme Court at Special Term, entered September 30, 1977 in Albany County, which directed that petitioner be afforded notice and a hearing respecting the revocation of its license as a lottery sales agent. On December 13, 1972, Automated Ticket Systems, Ltd. (ATS), a Delaware corporation, entered into a contract with appellants' predecessors (Lottery) to sell lottery tickets by use of lottery ticket vending machines. Arthur Milgram was the president of and owned all the stock of ATS. The Lottery agreed to pay ATS commissions ranging from 6½% to 9% of the sales money received, depending on the number of tickets sold. The contract was amended on October 25, 1974, to provide that the term of the agreement would be for a period of five years from that date. The agreement, as amended, also provided, in clause (d) of paragraph 11, that: "This License Agreement shall automatically terminate in the event that the control of Automated [ATS] shall pass to any party other than Mr. Arthur Milgram without the prior written approval of the Board [New York State Racing and Wagering Board], but such approval shall not be unreasonably withheld." Thereafter, on September 25, 1975, Milgram transferred his shares of ATS for 55% of the capital stock of the newly organized Automated Ticket Management Corporation (hereinafter ATM). Another corporation, Equitable Capital Corp. (EQCAP) was issued the other 45% of the stock of ATM. Milgram remained as president and chief operating officer of ATS and occupied the same positions with ATM. On February 8, 1977, the Lottery wrote to Milgram for information regarding the relationships among ATM, ATS and EQCAP. On the same day Milgram was murdered in a "gangland style execution." On February 15, 1977, the Lottery and ATS entered into an interim contract for vending machine sales of lottery tickets for the duration of "Instant Game #2." The interim agreement contained a provision that the Lottery considered the contract with ATS terminated and that ATS considered the agreement to continue. By summons dated March 11, 1977, plaintiff commenced an action for declaratory judgment and injunctive relief in Supreme Court, New York County. ATS sought a declaration that the initial contract, as amended, was not terminated and requested relief *pendente lite* and permanently thereafter, preventing the Lottery from canceling the contract. The complaint also requested damages for breach of contract. Special Term, on plaintiff's motion, issued a temporary restraining order prohibiting the Lottery from refusing to continue with lottery activities under the original and modified agreements. On April 19, 1977, Special Term continued the temporary restraining order in effect until such time as "the Director of the New York State Division of the Lottery makes a determination under paragraph 11 (d) as to whether

approval of Automated [ATS] will be granted." The court directed that the determination be made in such manner that the basis of the determination can be substantiated. The parties agreed to this disposition and a further written order was entered on May 4, 1977. The Director of the Lottery issued his determination, in writing, terminating the contract and specifying the reasons for his decision on May 5, 1977. By order to show cause, dated May 6, 1977, ATS moved to vacate the determination of the Lottery Director and to hold him in contempt of court. Special Term held that the director was not in contempt of court for having made his determination without a prior hearing and held that the order of April 19, 1977, as entered on May 4, 1977, "did not direct that a hearing be held." The court further held that the motion to vacate the director's determination of May 5, 1977, was "essentially the basis for an article 78 proceeding" and converted the motion into an article 78 proceeding with the consent of both parties. The proceeding was then transferred to Albany County where the venue was proper. Thereafter, Special Term directed that the determination be vacated and annulled and that the matter be remanded to the Division of the Lottery to afford ATS notice and hearing "regarding the transfer of ownership and control at ATS." No hearing has been held. Subsequent orders were entered, which are not now relevant. There must be a reversal. Special Term improperly treated plaintiff's motion to vacate the determination as one for article 78 relief. An article 78 proceeding, however, is not the proper vehicle to resolve contractual rights (Matter of Mohican Cable T. V. Corp. v Cronin, 34 AD2d 692; Matter of Corbeau Constr. Corp. v Board of Educ., 32 AD2d 958, 959). Furthermore, a breach of contract claim against the State cannot be pursued in Supreme Court (Matter of Adams v New York State Civ. Serv. Comm., 51 AD2d 668). It must be brought in the Court of Claims (Court of Claims Act, § 9, subd 2). Plaintiff's cause of action is admittedly for breach of contract. In its brief on this appeal, ATS states that the gravamen of its cause of action "is that the State Lottery has been guilty of a breach of these written agreements under which plaintiff's lottery activities are to be conducted, with resultant uncalculable loss and damage to the plaintiff [ATS]." The parties' consent to the conversion of the action to an article 78 proceeding did not confer jurisdiction of the subject matter on the Supreme Court (Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324). The article 78 proceeding, therefore, should be dismissed. Judgment reversed, on the law, and complaint dismissed, without costs. Greenblott, J. P., Sweeney, Kane, Staley, Jr., and Mikoll, JJ., concur.