AUTOMATED TICKET SYSTEMS, LTD., Appellant-Respondent, v STATE OF NEW YORK, Respondent-Appellant.

Third Department, February 19, 1987

**APPEARANCES OF COUNSEL**

*Gainsburg, Gottlieb, Levitan, Greene & Cole (Samuel Gottlieb* and *Milton Shalleck* of counsel), for appellant-respondent.

*Robert Abrams, Attorney-General (Peter J. Dooley* and *William J. Kogan* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

KANE, J. P.

The circumstances giving rise to the present litigation are found in a decision of this court, as modified by the Court of Appeals, when the matter was before us on a prior occasion (*Automated Ticket Sys. v Quinn*, 70 AD2d 726, *mod* 49 NY2d 792). Therein, we found that the relief sought by claimant, Automated Ticket Systems, Ltd. (ATS), lay in an action for breach of contract which must be brought in the Court of Claims. The modification by the Court of Appeals let stand an underlying New York County declaratory judgment action, which ultimately was dismissed on the ground that the issues raised therein had become moot (*Automated Ticket Sys. v Quinn*, 90 AD2d 738, *affd* 58 NY2d 949).

The damages sought by claimant in this action are for losses suffered as a result of the termination of its license agreement with the State authorizing it to conduct the New York State Lottery. The State relies upon paragraph 11 (d) of that license agreement, providing for such termination, which states: "This License Agreement shall automatically terminate in the event that the control of [claimant] shall pass to any party other than Mr. Arthur Milgram without the prior written approval of the [New York State Racing and Wagering] Board, but such approval shall not be unreasonably withheld."

It was the activity of the late Arthur Milgram, the then president and sole stockholder of claimant, that precipitated the ultimate termination of the license agreement on May 5, 1977, when, on September 25, 1975, he exchanged all of his interest in claimant for 55% of the capital stock of the newly organized Automatic Ticket Management Corporation (ATM). The remaining 45% of ATM's stock was issued to yet another entity, Equitable Capital Corporation (EQCAP). These transfers, together with concern about claimant's alleged connections with organized crime, resulted in a communication to Milgram on February 8, 1977 from the Division of the Lottery,* requesting information concerning the relationships among claimant, ATM and EQCAP. It was on that day Milgram was murdered in what was described as a "gangland style" execution.

On this appeal, claimant contends that pursuant to Tax

---

* The Division of the Lottery succeeded the State Racing and Wagering Board as administrator of the Lottery effective March 31, 1976 (L 1976, ch 92).

Law § 1607, a hearing was required before the Lottery could make a determination whether to approve the passage of control of its operations. Concededly, the Lottery made its determination by the letter of May 5, 1977 to claimant's attorney setting forth, in detail, the reasons for its determination without any prior statutory hearing. It is our view that claimant's reliance upon the provisions of Tax Law § 1607 and *Matter of Hecht v Monaghan* (307 NY 461), which relate to matters involving administrative determinations made pursuant to statutory authority, is misplaced. Here, the revocation of the lottery agreement was in accord with the provisions of the unambiguous contract between claimant and the Lottery. An examination of those provisions, as they relate to the agreement as a whole, clearly demonstrate the parties never intended that notice and a hearing would be required before the Lottery could act pursuant to the automatic provision of paragraph 11 (d) *(see,* 22 NY Jur 2d, Contracts, § 220, at 65-66). Moreover, after examining the long history of this litigation and the established questionable fitness of claimant to "best serve public convenience" (Tax Law § 1605 [a]), there can be no merit to the argument that an approval of claimant's transfers of ownership was "unreasonably withheld". The Lottery's decision to cancel the license agreement with claimant was wholly reasonable and should not be disturbed.

Turning to the cross appeal, we conclude that the portion of the judgment that dismissed the counterclaim of the State must be reversed. Therein, the State seeks to recover the balance due from claimant for a quantity of lottery tickets forwarded to claimant on consignment to sell in its vending machines prior to the termination of the license agreement. First, we note that no reply to the State's counterclaim was ever served, as required by CPLR 3011. In addition, the arguments advanced by claimant are unpersuasive, since the obligations imposed upon claimant were pursuant to contract and the counterclaim sets forth a sufficient cause of action for its breach, which has not been denied.

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as dismissed the State's counterclaim; counterclaim reinstated and matter remitted to the Court of Claims for further proceedings thereon; and, as so modified, affirmed.