**Joanne E. FINLEY, M.D., Plaintiff,**

v.

**George T. GIACOBBE, Individually and as Commissioner, Department of Hospitals, Rockland County, New York, John T. Grant, Individually and as Rockland County Executive, Rockland County Department of Hospitals, Summit Park Hospital/Rockland County Infirmary, and County of Rockland, Defendants.**

**No. 93 Civ. 1464 (GLG).**

United States District Court, S.D. New York.

April 12, 1994.

---

Vladeck, Waldman, Elias & Engelhard, P.C. by Judith P. Vladeck, Debra L. Raskin, New York City, Lucinda M. Finley, Suny at Buffalo Law School, O'Brian Hall—Amherst Campus, Buffalo, NY, Joseph E. Finley, Baltimore, MD, for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City, for defendants.

## OPINION

GOETTEL, District Judge.

This case involves the alleged illegal firing of plaintiff Dr. Joanne E. Finley. Plaintiff was employed as Director of Medical Services for defendant Rockland County Department of Hospitals ("the Department of Hospitals") and Chief Medical Officer of defendant Summit Park Hospital/Rockland County Infirmary from December 3, 1991 through May 1992. Both Summit Park Hospital ("SPH") and Rockland County Infirmary ("RCI") are health care institutions operated by Rockland County which are covered by Article 28 of the New York Public Health Law. During her tenure as Chief Medical Officer, plaintiff attempted to admit patients with AIDS in need of long-term hospital care. As a result, she asserts that her employment was terminated.[1]

FACTS

Plaintiff originally brought this action under federal and state anti-discrimination laws. She also alleged a state law contract claim and a § 1983 claim for violation of her civil rights. On July 19, 1993, we issued an opinion which dismissed plaintiff's fourth cause of action under N.Y. State Human Rights Law, N.Y. Executive Law §§ 292(2) and 292(9), but denied defendants' motion to dismiss plaintiff's other claims. *Finley v. Giacobbe*, 827 F.Supp. 215 (S.D.N.Y.1993). Because the facts of this case were laid out in some depth in that decision we need not repeat them here.

Presently before the court are cross motions for partial summary judgment and plaintiff's motion to amend her complaint to add an additional defendant. In addition, since the return date of this motion, both plaintiff and defendants have made motions to supplement the record, pursuant to F.R.Civ.P. 56(e).

ANALYSIS

A. Cross–Motions for Summary Judgment

1. *Failure to Bring an Article 78 Proceeding*

Defendants first argue that they are entitled to summary judgment as to plaintiff's fifth and sixth causes of action because plaintiff's exclusive remedy is an article 78 proceeding in state court. Plaintiff's fifth cause of action is a contract claim alleging that state law and regulations and the medical staff by-laws are implied terms in her employment contract and that defendants' violation of the law, regulations and by-laws constitute a breach. Plaintiff's sixth cause of action alleges that defendants George T. Giacobbe, Commissioner of Hospitals for Rockland County, and John T. Grant, Rockland County Executive, tortiously interfered with her employment contract by firing her when they did not have the power to do so. Plaintiff argues that an article 78 proceeding is proper where one seeks administrative review of agency determinations or where one seeks to compel the performance of a duty by a board or officer. However, article 78 proceedings do not provide monetary relief aside from incidental damages. Thus, plaintiff argues that an article 78 proceeding would be improper where the primary relief sought is money damages.

a. *The article 78 requirement*

The main case that defendants rely upon is *Austin v. Board of Higher Educ. of the City of New York*, 5 N.Y.2d 430, 186 N.Y.S.2d 1, 158 N.E.2d 681 (1959). In *Austin*, six former employees of the Board of Higher Education for the City of New York brought suit to recover back pay alleging that their termination had violated their due process rights. *Id.* at 438, 186 N.Y.S.2d 1, 158 N.E.2d 681.[2]

---

1. Defendants strongly dispute this characterization.

2. Plaintiffs had stipulated to be bound by a final order resulting from an article 78 proceeding in which similarly situated former employees sought reinstatement. The New York Court of Appeals upheld dismissal of the article 78 proceeding, and the United States Supreme Court dismissed the plaintiffs' appeal on the grounds that they had failed to raise a federal question before the Court of Appeals. *Daniman v. Board of Educ.*, 306 N.Y. 532, 119 N.E.2d 373 (1954), *appeal dismissed*, 348 U.S. 933, 75 S.Ct. 355, 99 L.Ed. 732 (1954). However, the Supreme Court did not dismiss the appeal of one of their co-plaintiffs represented by a different counsel in

The Court of Appeals found no merit in the argument that plaintiffs were not required to proceed through an article 78 proceeding because their dismissals were the result of the automatic operation of the City Charter rather than the exercise of Board discretion. *Id.* at 442, 186 N.Y.S.2d 1, 158 N.E.2d 681. The Court of Appeals based its holding on the policy behind the short statute of limitations applied to article 78 proceedings. It wrote,

> [m]anifestly, the validity of a dismissal of a public employee should be determined expeditiously and before the possible accumulation of substantial sums for back pay. Unless reinstatement by means of an article 78 proceeding is a prerequisite to a claim for payment of salary the dismissed employee, without rendering any service, may defer action until expiration of the six-year Statute of Limitations is imminent.

*Id.* at 441, 186 N.Y.S.2d 1, 158 N.E.2d 681. *See Friedman v. State,* 24 N.Y.2d 528, 537, n. 2, 301 N.Y.S.2d 484, 249 N.E.2d 369 (1969) (distinguishing its facts from *Austin* because the claimant argued he had never properly been removed and so was not required to first establish a right to reinstatement through an article 78 proceeding).

New York courts have consistently interpreted *Austin* as holding that an article 78 proceeding is a necessary prerequisite to a successful action for lost salary. *See Johnson v. Director, Downstate Med. Ctr.,* 52 A.D.2d 357, 384 N.Y.S.2d 189, 193 (2d Dep't 1976), *aff'd,* 41 N.Y.2d 1061, 396 N.Y.S.2d 172, 364 N.E.2d 837 (1977) (noting the purpose of the requirement is to "relegate a dismissed employee to the prompt remedy of an article 78 proceeding"); *Abramson v. Board of Educ. of the City of New York,* 120 A.D.2d 474, 502 N.Y.S.2d 30, 31 (2d Dep't 1986) (holding "[a] discharged public employee cannot recover back pay unless he proves his right to the position from which he was discharged in a proceeding pursuant to CPLR article 78"); *State Div. of Human Rights v. N.Y. State Dep't of Correctional Svcs.,* 90 A.D.2d 51, 456 N.Y.S.2d 63 (2d Dep't 1982) (holding unless a right to possession of an office or position is established by mandamus, "other adjudication or stipulation, recovery of back pay is barred.")

Despite the clear language in *Austin,* plaintiff argues that article 78 proceedings are not the proper vehicle for contract actions. *Automated Ticket Systems, Ltd. v. Quinn,* 70 A.D.2d 726, 416 N.Y.S.2d 864 (3d Dep't 1979). While this is true as a general proposition, we believe contract claims asserting breach of an *employment* contract are distinguishable.[3] *See Faillace v. Port Auth. of N.Y. & N.J.,* 130 A.D.2d 34, 517 N.Y.S.2d 941, 947 (1st Dep't 1987) (holding that the "appropriate vehicle for plaintiff to assert his [breach of employment contract claim] is a CPLR Article 78 proceeding and not an action at law."), *appeal denied,* 70 N.Y.2d 613, 524 N.Y.S.2d 432, 519 N.E.2d 343 (1987); *Clancy v. State of N.Y.,* 126 Misc.2d 292, 481 N.Y.S.2d 943, 945 (Ct.Cl.

---

the article 78 proceeding who succeeded in raising a federal question below. The Supreme Court found for the co-plaintiff who was eventually reinstated. *Slochower v. Board of Educ.,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956).

**3.** Plaintiff cites several cases which she claims establish that an article 78 proceeding is not the proper forum for a breach of an employment contract claim. However, the issue of the proper forum for breach of an employment contract claim did not appear to have been raised in either *Smith v. Rise East School,* 120 A.D.2d 726, 502 N.Y.S.2d 780 (2d Dep't 1986) or *Carney v. Memorial Hosp. and Nursing Home of Greene County,* 101 A.D.2d 990, 477 N.Y.S.2d 735 (3d Dep't 1984), *order. modified and affirmed,* 64 N.Y.2d 770, 485 N.Y.S.2d 984, 475 N.E.2d 451 (1985).

*Forino v. City of Troy,* 42 A.D.2d 647, 345 N.Y.S.2d 148 (3d Dep't 1973) and *Leisner v.*

*Bahou,* 97 A.D.2d 860, 469 N.Y.S.2d 255 (3rd Dep't 1983), *appeal dismissed in part,* 61 N.Y.2d 985, 475 N.Y.S.2d 282, 463 N.E.2d 623 (1984), and *appeal dismissed in part and denied in part,* 62 N.Y.2d 940, 479 N.Y.S.2d 214, 468 N.E.2d 52 (1984) are distinguishable from the facts here. *Forino* involved a suit for the salary differential owed to plaintiff as a result of overtime work already performed. Thus, there was no need for the court to decide whether plaintiff had been properly terminated. Indeed, the *Forino* court wrote, "an article 78 proceeding is not the exclusive remedy for the recovery of unpaid back salary which is *otherwise due and owing.*" *Forino,* 345 N.Y.S.2d at 150. The *Leisner* court simply held that a claim for money damages could not be maintained against as government employee sued in his individual capacity. *Leisner,* 469 N.Y.S.2d at 258.

1984) (holding "a breach of contract action for lost wages may not be maintained since claimant has not obtained reinstatement to her former position via an Article 78 proceeding, a condition precedent to such an action against a public employer"); *Lachica v. State of N.Y.*, 139 Misc.2d 772, 528 N.Y.S.2d 963, 965 (Ct.Cl.1988) (holding that a doctor could not maintain her breach of contract claim based upon her right to continue in a residency program because the decision not to approve her entry into the third year of a residency program was a professional discretionary action "a decision which the Court should not review in the context of an action for damages" and that the claimant should have first sought review in an article 78 proceeding). Thus, we conclude that New York law requires that breach of employment contract claims be brought by article 78 proceedings. In addition, we note, although plaintiff asserts that she is primarily seeking damages, her prayer for relief seeks either money damages or reinstatement which further supports our conclusion that an article 78 proceeding is the proper forum for her claim.

### b. *Applicable statute of limitations*

■ Article 78 proceedings have a four month statute of limitations. N.Y. C.P.L.R. § 217. Plaintiff sent a letter of resignation on May 18, 1992, effective May 22, and this suit was filed on March 10, 1993.[4] However, plaintiff argues that we should not grant summary judgment as to her fifth and sixth claims even if we find that the claims should have been brought in an article 78 proceeding because N.Y. C.P.L.R. § 103 empowers a New York court that otherwise has jurisdiction over the parties to convert a civil proceeding brought in the improper form to one in the proper form rather than dismissing the claim.[5] *In re Cromwell Towers Redevelopment Co. v. City of Yonkers*, 41 N.Y.2d 1, 390 N.Y.S.2d 822, 359 N.E.2d 333 (1976). She also cites *Chase v. Boisvert*, 78 Misc.2d 1061, 359 N.Y.S.2d 400, 404–05 (1974) claim-

ing it establishes that when a plaintiff brings a contract claim in an article 78 proceeding, New York courts apply the contract statute of limitations.

*Chase* involved a suit brought by the administrator of Health Service for the City of New York against the Commissioner of Social Services of Ontario County seeking reimbursement for healthcare services. The *Chase* court held that the obligation to make payment was a continuing obligation which was not subject to the four-month limitation period. *Id.*, 359 N.Y.S.2d at 404. It went on to state that the proceeding was "in reality bottomed upon breach of a written agreement," so that the four month statute of limitation should not apply. *Id.* However, the court noted that the action could have properly been brought either as an article 78 proceeding or an action at law. *Id.* at 403.

We think that plaintiff's claim alleging breach of her employment contract is distinguishable from *Chase*. Unlike *Chase*, where the plaintiff exercised a choice between proceedings and the court was concerned that the plaintiff's choice not impact upon the length of the applicable statute of limitations, Finley had no choice. New York case law has clearly established that a public employee seeking damages for his or her termination must first bring an article 78 proceeding to establish the wrongfulness of the termination. Further, the very purpose for requiring the article 78 proceeding articulated in *Austin* is to apply the shorter statute of limitations in order to prevent public employees from delaying in bringing damage claims.

Thus, even if a federal court had the power to preside over an article 78 proceeding, we cannot do so here because the applicable statute of limitations has expired. Therefore, we deny plaintiff's motion and grant defendants' motion for summary judgment as to plaintiff's fifth cause of action.

### c. *Sixth cause of action*

■ Defendants assert that they are entitled to summary judgment as to plaintiff's

---

**4.** Plaintiff alleges that she was constructively discharged.

**5.** N.Y. C.P.L.R. § 103 reads: "[i]f a court has obtained jurisdiction over the parties, a judicial

proceeding shall not be dismissed solely because it was not brought in the proper form, but the court shall make whatever order is required for its proper prosecution."

sixth cause of action for the same reasons set out above. In support of their position, defendants argue that the tortious interference claim "is nothing more than her breach of public employment contract claim dressed in different garb." However, New York recognizes a separate cause of action for tortious interference with employment contract, even where employment is terminable at-will. *Mansour v. Abrams,* 120 A.D.2d 933, 502 N.Y.S.2d 877, 878 (4th Dep't 1986). .

■ While plaintiff's sixth cause of action may be an attempt to hold additional defendants responsible for her termination based on a similar legal theory as her breach of contract claim, there is one crucial difference. Plaintiff brings her sixth cause of action against Giacobbe and Grant individually, and damages against an officer in his or her individual capacity cannot be recovered in an article 78 proceeding. *Leisner v. Bahou,* 469 N.Y.S.2d at 258. Therefore we cannot grant defendants' motion for summary judgment as to the sixth cause of action based upon plaintiff's failure to proceed through an article 78 proceeding.

**2. *Merits of the Sixth Cause of Action***

Defendants argue, even if plaintiff was not required to bring her sixth cause of action in an article 78 proceeding, they are still entitled to summary judgment because plaintiff has failed to establish a genuine issue of material fact as to essential elements of her claim. Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To summarize the sixth cause of action, plaintiff alleges that New York law and regulations and the SPH/RCI by-laws vest exclusive authority to hire and fire the medical director in the hospital's governing body. Because the Board of Governors constitutes SPH/RCI's governing body, plaintiff argues that defendants Giacobbe and Grant lacked the authority to terminate her employment and that by so doing, they tortiously interfered with her implied employment contract.

**a. *The prima facie case***

■ The New York Court of Appeals has stated that:

[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other from the failure of the third person to perform the contract.

*Guard–Life Corp. v. S. Parker Hardware Mfg.,* 50 N.Y.2d 183, 189, 428 N.Y.S.2d 628, 406 N.E.2d 445, *quoting* Restatement of the Law of Torts 2d § 766 (1977). In order to sustain her claim, plaintiff must establish 1) the existence of a valid employment contract, 2) that Grant and Giacobbe had knowledge of the contract, 3) that they intentionally procured a breach of the contract without justification, and 4) that a breach occurred which caused damage to the plaintiff. *Kaminski v. United Parcel Svc.,* 120 A.D.2d 409, 501 N.Y.S.2d 871 (1st Dep't 1986).

**b. *Existence of an employment contract***

■ In determining whether plaintiff has established a genuine issue of material fact as to the existence of a valid employment contract, we must first determine what type of contract is at issue. It is undisputed that plaintiff did not have a written employment contract. Under New York law employment contracts for an indefinite term are presumed to be at-will "in the absence of circumstances showing a different intention." *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 466, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), *quoting,* Mandel, Preparation of Commercial Agreements [1978 ed.] pp. 164–65.

In this instance, there are no circumstances indicating an intention to create a just cause provision. Despite plaintiff's assertions that New York law and regulations and the hospital by-laws changed her at-will status, we think at most they can be construed to establish an implied contractual term which solely vests the power to terminate plaintiff in the Board of Governors. Accepting plaintiff's claims as true for the moment, as long as the Board of Governors made the decision to terminate plaintiff, it was free to do so at all times for any reason or no reason at all. Thus, even if plaintiff

succeeds in establishing an implied contractual term, any breach of contract claim would turn on whether the proper parties effectuated her termination rather than whether or not there was just cause for her termination.

In our prior decision, we denied defendants' motion to dismiss and held that, under New York law, hospital by-laws can form the basis of a breach of employment contract claim.[6] Plaintiff argues that the regulations and by-laws conclusively establish that Giacobbe did not have the power to terminate plaintiff and interprets our prior decision to hold that New York regulations and the hospital by-laws were implied terms of plaintiff's employment contract. Plaintiff misinterprets our holding.

First, while we held that "under New York law, hospital by-laws can form the basis of a breach of employment contract claim," we did not hold that the SPH/RCI by-laws were implied terms in plaintiff's employment contract. Further, we also did not hold that the regulations and by-laws vested exclusive power to terminate the plaintiff with the Board of Governors. We merely held that a reasonable jury could so conclude. With the benefit of more discovery, we now proceed to answer the question of whether the by-laws and regulations were implied terms in plaintiff's employment contract.

### 1) *Detrimental reliance*

Defendants argue that plaintiff has failed to establish a claim for tortious interference with contract because she did not rely upon the provisions of New York law and regulations or the by-law provisions at issue when she accepted employment with the Department of Hospitals and RCI/SPH. Plaintiff maintains that reliance is not a necessary element to establish an implied contractual term.

The first New York case to recognize that external sources could form the basis of implied contractual provisions was *Weiner v. McGraw–Hill*, 57 N.Y.2d at 465–66, 457 N.Y.S.2d 193, 443 N.E.2d 441. In *Weiner*, the Court of Appeals held that there was sufficient evidence to support an implied just cause provision where 1) the plaintiff was induced to leave another employer with the assurance that McGraw–Hill would not fire him without cause, 2) the assurance was incorporated into plaintiff's employment application through references to the employee handbook, 3) plaintiff rejected other employment offers in reliance on the assurance, and 4) plaintiff had been informed on several occasions when he wished to terminate subordinates that he must proceed in strict compliance with the handbook and policy manuals because employees could only be terminated for cause. The Court of Appeals stressed the necessity of looking at the totality of the circumstance in determining whether the at-will presumption is overcome:

> the trier of the facts will have to consider the 'course of conduct' of the parties, 'including their writings' and their antecedent negotiations. Moreover, ... it is not McGraw's subjective intent, nor 'any single act, phase or other expression', but 'the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain', which will control.

*Id.* at 466–67, 457 N.Y.S.2d 193, 443 N.E.2d 441.

New York cases after *Weiner* have interpreted it to require detrimental reliance on an express limitation, such as the provisions of an employee handbook, before finding an implied contractual restraint upon an employer's freedom to discharge. *See Lapidus v. New York City Chapter of the N.Y. State Ass'n for Retarded Children*, 118 A.D.2d 122,

---

**6.** As discussed in our previous decision, N.Y. regulations provide that the governing body shall appoint a physician as medical director, 10 N.Y.C.C.R. § 405.2(e)(2), SPH/RCI by-laws state that "final responsibility for appointment or cancellation of an appointment [to the medical staff] rests with the Board of Governors." By-Laws Art. III § 3.

However, the regulations also provide that the chief executive officer is responsible for daily management and operations of the hospital, and the by-laws define "Commissioner" as the individual appointed to act on behalf of the governing body and County Executive in the overall management of the hospital. 10 N.Y.C.C.R. §§ 405.2(d), 405.3. Based upon the by-laws and regulations, we held that we could not state as a matter of law that plaintiff had failed to state a claim.

504 N.Y.S.2d 629, 631 (1st Dep't 1986); *Novinger v. Eden Park Health Svcs., Inc.,* 167 A.D.2d 590, 563 N.Y.S.2d 219, 221 (3rd Dep't 1990), *appeal denied,* 77 N.Y.2d 810, 571 N.Y.S.2d 913, 575 N.E.2d 399 (1991); *DiCocco v. Capital Area Community Health Plan,* 159 A.D.2d 119, 559 N.Y.S.2d 395, 397 (3rd Dep't 1990), *appeal denied,* 77 N.Y.2d 802, 566 N.Y.S.2d 587, 567 N.E.2d 981 (1991); *Marvin v. Kent Nursing Home,* 153 A.D.2d 553, 544 N.Y.S.2d 210 (2d Dep't 1989); *Brown v. General Elec. Co.,* 144 A.D.2d 746, 534 N.Y.S.2d 743, 744–45 (3rd Dep't 1988). This court has come to a similar conclusion. *See Cucchi v. New York City Off–Track Betting Corp.,* 818 F.Supp. 647 (S.D.N.Y.1993).

Giacobbe offered plaintiff the position of Director of Medical Services for the Department of Hospitals in November of 1991. She accepted the offer effective December 3, 1991 and was also given the title of chief medical officer of SPH/RCI. At her deposition, plaintiff testified that she did not receive a copy of the state regulations until January or February of 1992. She further stated that she did not review SPH/RCI's medical staff by-laws until January of 1992 and that she has never reviewed the by-laws for the Board of Governors. In addition, plaintiff was originally hired by Giacobbe which suggests that she believed that he, rather than the Board of Governors, had the power to hire and fire her. Thus, she could not have relied upon the Board of Governors' sole authority to terminate her when she accepted her position.

Further, plaintiff's deposition testimony is that she was on leave from the Jersey City Medical Center, which had just been turned down for a fellowship in geriatric medicine which was to provide funding for her work, when she applied to the Department of Hospitals. While plaintiff appeared to have other job applications pending at the time she accepted the position of Medical Director and Chief Medical Officer, none had come to fruition. In light of the fact that plaintiff neither knew about the alleged implied contractual provisions at the time she accepted defendants' employment offer, nor gave up other employment opportunities, we find that plaintiff has failed to establish detrimental reliance upon the alleged implied contractual term.

### 2) *Hospital by-laws as implied contractual terms*

Plaintiff asserts that "New York courts have never limited a hospital's obligations to adhere to its own by-laws to situations where a doctor can show reliance on the by-laws is what induced her to accept the relationship with the hospital." Similarly, she also argues that "[t]here is no New York case holding that an employer's obligation to adhere to requirements of state law is contingent on an employee's proof that they relied upon the existence of the legal obligation in accepting the position."

In our prior decision, we rejected defendants' argument that *Murphy v. St. Agnes Hosp.,* 107 A.D.2d 685, 484 N.Y.S.2d 40 (2d Dep't 1985) and *Giannelli v. St. Vincent's Hosp.,* 160 A.D.2d 227, 553 N.Y.S.2d 677 (1st Dep't 1990) were distinguishable from the case at hand because *St. Agnes* and *Giannelli* involved hospitals' failure to comply with their by-laws in the context of the termination of doctors' hospital privileges, rather than in the employment termination context. In determining whether or not hospital by-laws could form the basis of a breach of employment contract claim, we wrote, "[r]egardless of whether the termination of a doctor's employment or hospital privileges are at issue, in both instances we are dealing with by-laws which set forth certain procedures for the termination of valuable interests. The same fairness considerations which concerned the Second Department in *St. Agnes* apply here." *Finley,* 827 F.Supp. at 222.

While we found that the fairness considerations behind *St. Agnes* and *Giannelli,* equally supported our holding that hospital by-laws can form the basis of a breach of employment contract claim, we did not hold that such a breach of employment contract claim was identical to the breach of contract claims in the two New York cases. Thus, the fact that the *St. Agnes* and *Giannelli* courts did not specifically find that the doctors relied upon the hospital by-laws does not support the conclusion that no such reliance is necessary in the employment context. Indeed,

New York case law clearly requires detrimental reliance on an alleged implied contractual term to an employment contract. Because we have found there is no genuine issue of material fact as to whether or not plaintiff relied upon the alleged implied contractual term, we grant defendants' motion for summary judgment as to the sixth cause of action.[7]

### 3. *Merits of the seventh cause of action*

■ Both plaintiff and the defendants have moved for summary judgment as to the seventh cause of action. The seventh cause of action is a § 1983 claim alleging violation of plaintiff's due process rights. The due process clause of the Fourteenth Amendment provides that when the government acts to deprive a person of already acquired property interests, the person is entitled to procedural protections. *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972).

■ Before plaintiff can establish that her due process rights were violated, she must show that she had a protectible property interest. Such interests are not created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. at 2709. Property interests can also be created by contractual provisions. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), *overruled on different grounds, Rust v. Sullivan*, 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991).

As a general matter, a public employee who claims that the procedures (or lack there of) proceeding his or her termination violated due process must first establish some right to continued employment. Such rights can arise from a written employment contract with an explicit tenure provision, a pattern of conduct which implies a *de facto* tenure program, or operation of state civil service rules. *Id.*, 408 U.S. at 601–02, 92 S.Ct. at 2699–2700; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

#### a. *Rockland County Civil Service Rules*

■ Originally, plaintiff alleged that she had become a permanent employee by operation of the Rockland County Civil Service Rules ("Civil Service Rules") and, thus, was entitled to civil service procedural protections prior to her termination. Defendants asserted that plaintiff was still a probationary employee at the time she was let go and thus was not covered by the Civil Service Rules.

The Civil Service Rules guarantee permanency of appointment after the completion of an eight week probation period unless the employee receives written notice that the probationary period will be continued. However, the rules also require that the probationary period shall be extended one day for every day over ten that the employee takes as leave.

Finley's employment began on December 3, 1991. She resigned on May 18, 1992, long after the last day of the initial eight week period which was January 27, 1992. However, Giacobbe sent plaintiff a letter extending her probation on January 28, 1992, and it is undisputed that plaintiff took twelve days of leave which would have extended the mandatory probation period to January 29. Because plaintiff's probation was extended before the end of her mandatory probationary period, we grant defendants' motion for summary judgment as to plaintiff's due process claim based upon the Rockland County Civil Service Rules.[8]

---

7. We note that plaintiff's failure to establish reliance on the alleged implied contractual term provides an additional reason for granting summary judgment to defendants in the fifth cause of action.

8. Plaintiff argues that Giacobbe did not have the power to extend her probationary period, which she asserts only the "proper appointing authority" could do. In support of her position, she cites *People ex rel. Goldschmidt v. Board of Educ. of N.Y.C.*, 217 N.Y. 470, 112 N.E. 167 (1916) and *Schneider v. Lynde*, 12 A.D.2d 812, 210 N.Y.S.2d 323 (2d Dep't 1961). We find those two cases distinguishable because they involved decisions to terminate probationary employees rather than decisions to extend their probationary periods and because the civil service rules at issue clearly stated the proper entity that was empowered to give notice. In contrast, rule XVI(d)(1) of the

### b. *Protectible property interest in plaintiff's position*

Plaintiff now shifts her argument and contends that she had a property interest in only being terminated by the Board of Governors. We note that plaintiff was still a probationary employee when she was terminated and thus cannot claim that her civil service status created a protectible right. Further, she did not have a written employment contract containing a "just cause" or tenure provision.

Plaintiff argues that "numerous federal courts have held that a doctor's staff affiliation with a hospital or position of leadership on the medical staff of a public hospital is an important property interest subject to the procedural due process guarantees of the 14th amendment." While this may be true as a general statement, plaintiff seems to suggest that the importance of a position to its holder alone is sufficient to create a protectible property interest. We must disagree with this proposition. Although the value of the interest at stake is a factor in determining whether it rises to a property right, a plaintiff is not entitled to due process, no matter how great his or her interest is, as long as it remains a subjective expectancy rather than an entitlement. *Perry v. Sindermann,* 408 U.S. at 603, 92 S.Ct. at 2700–01.

In support of her position, plaintiff principally relies on *Northeast Georgia Radiological Ass., P.C. v. Tidwell,* 670 F.2d 507 (2d Cir.1982) and *Ezekwo v. New York City Health & Hosp. Corp.,* 940 F.2d 775 (2d Cir.1991). In *Ezekwo,* the Second Circuit held that "[i]n determining which interests are afforded [due process] protection, a court must look to *whether the interest involved would be protected under state law* and must 'weigh the importance to the holder of the right.'" *Id.* at 783 (emphasis added and citations omitted). It went on to hold that the hospital's practice of awarding the position of chief resident to all third year residents on a rotating basis coupled with plaintiff's reasonable reliance thereon created a contractual right that rose to the level of a protectible property interest. *Id.*

Similarly in *Tidwell,* the Second Circuit held that "property interests [may] emerge from mutual understandings adjunct to the contract." *Tidwell,* 670 F.2d at 512. As such, it held that a doctor had a protectible property interest in medical staff privileges where an understanding that procedural due process would be provided prior to the suspension or termination of staff privileges created by the defendant hospital authority's by-laws was an implied part of the doctor's contract.

We hold that *Tidwell* and *Ezekwo* are distinguishable from this case because plaintiff has failed to establish that she has had an expectation in continued employment. As we stated earlier, plaintiff was not protected by civil service status nor did she have a written contract with a "just cause" or tenure provision. Further, unlike the plaintiff in *Ezekwo,* no course of conduct assured plaintiff an entitlement to her position. *Tidwell* is also distinguishable because in that case, the assurances provided to the plaintiff of due process created a protectible interest. In this case, plaintiff had neither an entitlement to her position nor an assurance that she would not lose her position absent due process. Indeed, we think that plaintiff would agree that, absent termination for an illegal motive, she could have been terminated at any time without any procedural protections so long as the termination was effectuated by the Board of Governors rather than by Giacobbe.

Perhaps recognizing that she does not have an entitlement to continued employment, plaintiff argues that she has "a property interest in having the proper authority consider her fitness to retain [her former] position."[9] Even if plaintiff successfully

---

Rockland County Civil Service Rules does not specify who is empowered to give an employee notice of an extension of probation.

**9.** Plaintiff incorrectly asserts that we have already held that state law and regulations and the medical staff by-laws form implied contractual terms. As we stated earlier, we merely held that state law, regulations and hospital by-laws *can* form the basis of a breach of contract claim. *Finley v. Giacobbe,* 827 F.Supp. 215, 222, 223 (S.D.N.Y.1993).

proves that the by-laws, regulations, and state law gave her the right to have the Board of Governors as decisionmaker, we do not think that it can properly be characterized as a property interest. Therefore, we must grant defendants' motion for summary judgment as to plaintiff's seventh cause of action.

**B. Motion to Amend the Complaint**

Plaintiff moves for leave to file a first amended complaint in order to add Richard Maloney, the administrator of Patient Care Services of the Rockland County Department of Hospitals and the administrator of RCI, as a defendant. Plaintiff contends that deposition testimony indicates that Maloney was also involved in the alleged illegal termination of plaintiff. She also seeks to amend her seventh cause of action to change the allegation that she was entitled to civil service protection because notice of the extension of her probation period was untimely to an allegation that her probation period was not properly extended because Giacobbe did not have the power to do so.

Because we have already granted summary judgment to the defendants as to plaintiff's sixth and seventh causes of action despite the fact that we considered her proposed amendments to the due process claim, we deny her motion to file a first amended complaint.

In summary, we deny plaintiff's motion for summary judgment and grant defendants' cross-motion as to the fifth and seventh causes of action and grant defendants' motion for summary judgment as to the sixth cause of action. Accordingly, we deny plaintiff's motion to amend the seventh cause of action and add an additional defendant. Finally, we deny both plaintiff and defendants' motion to supplement the record as the additional evidence proffered was not relevant to our present holding.

SO ORDERED.