670 F.2d 507
 NORTHEAST GEORGIA RADIOLOGICAL ASSOCIATES, P. C., and
Kenneth W. Horne, M.D., Plaintiffs-Appellants,
v.
Dr. Owen TIDWELL, individually, H. Virgil Parker,
individually, Herman Avery, individually, Thomas Carter,
individually, Jack Queen, individually, W. B. Stephens,
individually, W. E. Briscoe, individually, Jim Gornto,
individually, George Prather, individually, Walton County
Hospital Authority, Dr. Catherine Foster and Estate of J. T.
Byrd, Deceased, Harold Byrd, Executor, Defendants-Appellees.
 No. 79-3450.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B*
 March 15, 1982.
 Cook, Noell, Tolley & Aldridge, John S. Noell, Jr., Athens, Ga., for plaintiffs-appellants.
 Sorrells, Hearn & Childers, George J. Hearn, III, William R. Childers, Jr., Monroe, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before SIMPSON, RONEY and THOMAS A. CLARK, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Appellants, Kenneth W. Horne, M.D., and Northeast Georgia Radiological Associates, P. C., appeal the granting of appellees' motion for summary judgment and the denial of their claims under 42 U.S.C. § 1983.[1]
 
 
 2
 On May 18, 1977, appellant Kenneth W. Horne, M.D., a licensed radiologist, applied for and received medical staff privileges at Walton County Hospital. Later that month, Dr. Horne appeared before the hospital's Medical Staff Executive Committee and informed the physicians that he could provide the hospital with radiological services three hours a day, six days a week, and cover all emergencies, during a transition period caused by the previous radiologist's retirement, until he could acquire an associate radiologist. Subsequently, in June, Dr. Horne, through his wholly owned professional corporation, Northeast Georgia Radiological Associates, P. C. (hereinafter P. C.),[2] entered into a contract with appellee, Walton County Hospital Authority, (hereinafter Authority), to provide the hospital with exclusive radiological services. The contractual terms provided for continuous employment with termination only for cause.[3] All P. C. employees were required to be members of the hospital medical staff.[4] The contract also provided that P. C. employees' staff privileges would be withdrawn if the radiology services agreement was terminated.[5] All other matters not included in the contract were to be governed by the Medical Staff By-Laws and Hospital policies.[6]
 
 
 3
 After the contract period had begun, Dr. Horne did provide the hospital with eighteen hours a week of radiological services and did seek an associate to supplement his hospital radiological coverage. After writing to more than one hundred and twenty radiologists, Dr. Horne began discussions with Owen Tidwell, M.D., one of the appellees.
 
 
 4
 On October 14, 1977, five months into the contract, Hospital Administrator Virgil Parker announced to the medical staff that Dr. Tidwell would be joining the hospital's radiology department as Dr. Horne's associate. The two radiologists, however, failed to reach an employment agreement. Consequently, radiological coverage at the hospital remained at eighteen hours a week.
 
 
 5
 On October 18, unknown to Dr. Horne, Dr. Tidwell met with the Hospital Authority at Mr. Parker's invitation. At the meeting, Authority members asked Dr. Tidwell whether he was interested in a full time position as the Hospital Radiologist. According to his deposition, Dr. Tidwell replied that he was seeking employment as a radiologist and would work for the Authority if no contract existed between the Authority and Dr. Horne. Thereafter, according to the minutes of the meeting, the Authority voted to terminate the P. C.'s contract as of October 31, 1977. Later, on October 25, Mr. Parker wrote Dr. Tidwell and asked him to join the medical staff on November 1, 1977.
 
 
 6
 No pre-termination hearing was afforded either the P. C. or Dr. Horne. Two letters dated October 25 (one to the P. C. and the other to Dr. Horne) stated that the Authority had terminated the radiological services contract. In response, Dr. Horne wrote Mr. Parker that he did not consider the contract terminated and, in addition, requested a hearing pursuant to the medical staff by-laws. On October 31, Mr. Parker replied by mail that the contract was terminated, and officially withdrew Dr. Horne's medical staff privileges effective October 31, 1977. Mr. Parker invited Dr. Horne to attend the next scheduled Authority meeting but did not offer a termination hearing. The Medical Staff Executive Committee met on November 1, and the Authority met on November 14, but Dr. Horne did not attend either meeting. Meanwhile, on Monday, November 1, when Dr. Horne appeared at the hospital's radiological laboratory, he was met by Dr. Tidwell, who told Dr. Horne that he, Tidwell, was now the Walton County Hospital Radiologist.
 
 
 7
 Dr. Horne and the P. C. sued Dr. Tidwell et al., in the United States District Court for the Middle District of Georgia under 42 U.S.C. § 1983, accompanied by pendent state claims for breach of contract and tortious interference with a contract. Subsequently, the defendants filed a motion to dismiss, asserting that the complaint failed to state a claim under which relief could be granted. The District Court, under Federal Rules of Civil Procedure 12(b) and 56, sua sponte converted the motion into a motion for summary judgment.[7] Then, after reviewing the pleadings and supplemental materials, the court granted the motion for summary judgment, holding that no genuine issue existed as to any material fact regarding Dr. Horne and the P. C.'s § 1983 claim. As a result of the court's ruling, the plaintiffs voluntarily dismissed the pendent state claims and filed suit in Georgia Superior Court with respect to said claims.
 
 
 8
 The propriety of the District Court's granting of the defendants' motion for summary judgment, both as to the P. C. and Dr. Horne, is the pivotal issue on appeal. The lower court characterized the action as a breach of contract between the P. C. and the Authority with jurisdiction in state court. From this, the court determined Dr. Horne's status exclusively as a P. C. employee, thereby lacking a property interest protected by due process:
 
 
 9
 (U)ntil he (Dr. Horne) evidences a real intention to engage in the private practice of radiology in Walton County, applies to defendant hospital to be granted staff physician privileges usually granted to private practitioners, and is denied those privileges, he has no claim of deprivation of constitutionally protected due process rights. See, e.g., Klinge v. Lutheran Charities Ass'n of St. Louis, 523 F.2d 56 (8th Cir. 1975); Burkette v. Lutheran General Hospital, 595 F.2d 255 (5th Cir. 1979). This having not occurred, Dr. Horne may not prevail on his individual claim of constitutional deprivation. (Record, Vol. 1 at 280).
 
 
 10
 The grant of summary judgment under Rule 56(c) F.R.Civ.P. requires that two separate showings be made: "... that there is no genuine issue as to any material fact" and (2) "that the moving party is entitled to judgment as a matter of law."[8]
 
 
 11
 In this case, as we demonstrate below, the second prerequisite was missing. Disregarding the presence or absence of issues as to any material fact, the District Court erred in concluding that the movants were entitled to judgment as a matter of law. They were not.
 
 
 12
 Our analysis begins with an examination of the written contract between the P. C. and the Authority. "Principles of contract law naturally serve as useful guides in determining whether or not a constitutionally protected property interest exists." Jago v. Van Curen, --- U.S. ----, ----, 102 S.Ct. 31, 34, 70 L.Ed. --- (1981); see, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Stewart v. Bailey, 556 F.2d 281 (5th Cir. 1977). As custom or habit may supplement a contract, so too may property interests emerge from explicit mutual understandings adjunct to the contract. "Explicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in the light of the surrounding circumstances.' A. Corbin on Contracts § 562 (1960). And '(t)he meaning of (the promisor's) words and acts is found by relating them to the usage of the past.' Ibid." Perry v. Sindermann, supra, 408 U.S. at 602, 92 S.Ct. at 2700. A part of the contract was the understanding provided Dr. Horne-and all Walton County Hospital physicians with medical staff privileges-of procedural due process prior to the suspension or termination of staff privileges. The medical staff by-laws, incorporated into the Authority's by-laws, detail the procedure to be followed when corrective action against a medical staff physician is warranted. Notice and hearing[9] within a seven day period is required when staff privileges are suspended or terminated.[10] In addition, appellate review is provided by the Medical Staff Executive Committee, and in addition, by the Hospital Authority.[11] Accordingly, in the present case, the contract, incorporating the medical staff by-laws, and the by-laws per se, established "the existence of rules or mutually explicit understandings," Perry v. Sindermann, 408 U.S. at 601, 92 S.Ct. at 2699, and sustained appellants' claim to a protected property interest. See, Winkler v. County of Dekalb, 648 F.2d 411 (5th Cir. 1979); Thurston v. Dekle, 531 F.2d 1264 (5th Cir. 1976), vacated on other grounds, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978).
 
 
 13
 Our decision recognizing the appellants' property interest follows principles established in prior Fifth Circuit cases which identify a physician's medical staff privileges as an interest protected by the Fourteenth Amendment. Shaw v. Hospital Authority of Cobb Cty., 507 F.2d 625 (5th Cir. 1975), aff'd on rehearing, 614 F.2d 946 (5th Cir. 1980); Woodbury v. McKinnon, 447 F.2d 839 (5th Cir. 1971); see also, Foster v. Mobile County Hospital Board, 398 F.2d 227 (5th Cir. 1968); Accord, Chiaffitelli v. Dettmer Hospital, Inc., 437 F.2d 429 (6th Cir. 1971); Drury v. Brumley, No. 76-277 (S.D.Ga. March 20, 1979).
 
 
 14
 Having ascertained a protectable property interest, we examine whether the appellants were afforded due process. The appellees argue, on one hand, notwithstanding a property interest, that Dr. Horne and the P. C. were not entitled to due process. But, on the other hand, appellees also argue that Dr. Horne was afforded due process when he was invited to attend the next scheduled Authority meeting. We need not address such a specious argument. Medical staff privileges embody such a valuable property interest that notice and hearing should be held prior to its termination or withdrawal, absent some extraordinary situation where a valid government or medical interest is at stake. Board of Regents v. Roth, 408 U.S. 564, 569-70 & n. 7 & 8, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); see Woodbury v. McKinnon, 447 F.2d 839 (5th Cir. 1979); see also, Glenn v. Newman, 614 F.2d 467 (5th Cir. 1980); Thurston v. Dekle, 531 F.2d 1264 (5th Cir. 1976), vacated on other grounds, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978); Burnley v. Thompson, 524 F.2d 1233 (5th Cir. 1975); Accord, Duffield v. Charleston Area Medical Center, 503 F.2d 512 (4th Cir. 1974); Jackson v. Norton-Children's Hospital, Inc., 487 F.2d 502 (6th Cir. 1973).
 
 
 15
 Our analysis concludes with a review of the P. C.'s due process rights. The District Court's order, characterizing the appellants claims solely as a breach of contract claim, is confusing. The order states that the P. C. had no federal constitutional claim, or that, as a corporation, it was not entitled to assert such a claim. Either view is erroneous. A corporation is a "person" who possesses fourteenth amendment due process rights. First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed.2d 660 (1936); Old Dominion Dairy v. Secretary of Defense, 631 F.2d 953 (D.C.Cir.1980).
 
 
 16
 In Old Dominion Dairy v. Secretary of Defense, 631 F.2d 953 (D.C.Cir.1980), the Defense Department determined that the dairy lacked "integrity" and rejected the dairy's bids on government milk contracts previously held by the dairy. The D. C. Circuit found a cognizable liberty interest for the corporation and held that the dairy was entitled to challenge the government's actions on due process grounds, citing Gonzalez v. Freeman, 334 F.2d 570 (D.C.Cir.1964):
 
 
 17
 Thus, to say that there is no "right" to government contracts does not resolve the question of justifiability. Of course, there is no such right ; but that cannot mean that the government can act arbitrarily, either substantively or procedurally, against a person or that such a person is not entitled to challenge the processes and the evidence before he is officially declared ineligible for government contracts. (emphasis in the original) Id., at 574. (Opinion by Burger, J., now U.S.C.J.).
 
 
 18
 Since a property interest existed in Dr. Horne's medical staff privileges, the P. C. was entitled to challenge the Authority on due process grounds. "(A) corporation may contract and may engage in the common occupations of life, and should be afforded no lesser protections under the Constitution than an individual to engage in such pursuits." Old Dominion Dairy v. Secretary of Defense, supra, at 962. Accordingly, corporations are "persons" whose rights are protected by 42 U.S.C. § 1983. Des Vergnes v. Seekonk Water Dist., 601 F.2d 9 (1st Cir. 1979); Safeguard Mutual Insurance Co. v. Miller, 472 F.2d 732 (3rd Cir. 1973); see generally, United Farmworkers of Fla. Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799 (5th Cir. 1974); Church of God of La., Inc. v. Monroe-Ouachita Regional Planning Council, 404 F.Supp. 175 (W.D.La.1975).
 
 
 19
 Because we find that summary judgment was not permitted since appellants were entitled to a hearing before the Medical Staff and Authority, conforming with minimal requirements of procedural due process of notice and hearing, we reverse and remand for proceedings consistent with this opinion.
 
 
 20
 REVERSED and REMANDED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452-October 14, 1980
 
 
 [1]
 Section 1983 reads as follows:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [2]
 Dr. Horne incorporated his medical practice as Northeast Georgia Radiological Associates, P. C., a Georgia corporation, in order to develop a personal retirement and pension plan. Dr. Horne is the president and sole stockholder; his wife is the corporation's secretary
 
 
 [3]
 Section 13 of the Contract provides: "this agreement shall be for a period of one year and shall be automatically renewed each successive year ... unless either party, within ninety days from the anniversary date notifies the opposite party ... * * * This agreement may be terminated for cause by the Hospital as to any and all those Hospital regulations which govern and control the other staff members of the Hospital ..."
 
 
 [4]
 Section 8 of the Contract provides: "The P. C.'s employees shall comply with the policies, rules, and regulations of the Hospital. The P. C.'s employees (who must have medical staff privileges in this Hospital) ..."
 
 
 [5]
 Section 1 of the Contract provides: "... it is further agreed that the P. C.'s employee's membership on the staff and all radiology privileges shall terminate if this Agreement is terminated."
 
 
 [6]
 Section 6 of the Contract provides: "In other matters not agreed upon herein they are subject only to the limitations of established medical staff and Hospital policies and by-laws, and rules and regulations established for the control and guidance of all staff positions."
 
 
 [7]
 In a Rule 12(b)(6) F.R.Civ.P. motion, the trial court has complete discretion in considering materials outside the pleadings. When materials are accepted outside the pleadings, the trial court must convert the Rule 12(b) motion into a Rule 56 motion for summary judgment. Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); Bossard v. Exxon, 559 F.2d 1040 (5th Cir. 1977), cert. denied, 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 532 (1978). See, Wright & Miller, Federal Practice and Procedure : Civil §§ 1367 & 2713 (1973)
 
 
 [8]
 Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458, 460 (1962). Summary judgment is reserved for the situation where the moving party has established his right to judgment with such clarity that the nonmoving party cannot recover under any discernible circumstance. Joplin v. Bias, 631 F.2d 1235, 1237 (5th Cir. 1980); Everhart v. Drake Management, Inc., 627 F.2d 686, 690 (5th Cir. 1980)
 
 
 [9]
 Article II, Section 5 of the Medical Staff By-Laws provides:
 "... when an appointment has not been renewed, has been denied, or when privileges and/or appointments have been, or are proposed to be, reduced, suspended or terminated, the Staff Member shall be afforded the opportunity of a hearing in accordance with due process provisions of the Medical Staff By-Laws."
 
 
 [10]
 Article VIII, Section 3 of the Medical Staff By-Laws provides: "... the hearing date ... for a practitioner who is under suspension which is then in effect shall be held as soon as arrangements therefor may reasonably be made, but no later than 7 days from the date of receipt of such practitioner's request for hearing."
 
 
 [11]
 Article VIII, Section 1 of the Medical Staff By-Laws provides that a practitioner receiving an adverse recommendation from the Medical Staff Executive Committee regarding his medical staff privileges, "... shall be entitled to a hearing before an ad hoc committee of the medical staff. If the recommendation of the executive committee following such hearing is still adverse to the affected practitioner, he shall then be entitled to an appellate review by the governing body before the governing body makes a final decision on the matter."