Joanne E. FINLEY, MD,
Plaintiff–Appellant,

v.

George T. GIACOBBE, Individually and as Commissioner, Department of Hospitals, Rockland County, New York, John T. Grant, Individually and as Rockland County Executive, Rockland County Department of Hospitals, Summit Park Hospital/Rockland County Infirmary and County of Rockland, Defendants–Appellees.

No. 45, Docket 95–7014.

United States Court of Appeals,
Second Circuit.

Argued Sept. 7, 1995.

Decided Jan. 5, 1996.

---

**1288**

Lucinda Finley, Buffalo, NY (Debra L. Raskin, Vladeck, Waldmand, Elias & Engelhard, New York City, Joseph E. Finley, Baltimore, MD, on the brief), for Plaintiff–Appellant.

John D. Winter, New York City (Patterson, Belknap, Webb & Tyler, New York City), for Defendants–Appellees.

Before: KEARSE, JACOBS and LEVAL, Circuit Judges.

JACOBS, Circuit Judge:

In this appeal, we consider issues bearing on whether an at will public employee who resigned during her probationary term of employment has a cause of action against the state and its officers for breach of contract, tortious interference with contract, and deprivation of procedural due process under 42 U.S.C. § 1983. Plaintiff Joanne E. Finley had held the position of hospital medical director for approximately five months when she was told that she would not be awarded permanent staff status at the end of her probationary period. Facing termination, Dr. Finley resigned from her position on May 18, 1992. She commenced this action in the United States District Court for the Southern District of New York (Goettel, J.) on March 10, 1993, against defendants George T. Giacobbe, the Rockland County Commissioner of Hospitals; Rockland County Executive John T. Grant; the Rockland County Department of Hospitals; Summit Park Hospital/Rockland County Infirmary; and Rockland County.

The district court granted summary judgment in favor of the defendants on April 12, 1994, holding (a) that New York law required Dr. Finley to assert her claim for breach of her employment contract in an article 78 proceeding before bringing an action at law, and that her article 78 claim was time-barred; (b) that Dr. Finley could not maintain an action for tortious interference because she had failed to establish the existence of an express or implied contract; and (c) that Dr. Finley did not have an actionable procedural due process claim because, as a probationary employee, she had no protectible property interest in her position. *Finley v. Giacobbe*, 848 F.Supp. 1146 (S.D.N.Y. 1994). The district court declined to allow Dr. Finley to add an additional defendant by way of an amended complaint because the amendment would be futile. The court entered final judgment for the defendants on December 20, 1994.

Dr. Finley appeals the district court's dismissal of each of her claims. With respect to the dismissal of her contract claim, Dr. Finley argues that an article 78 proceeding is not the proper or exclusive recourse for an employment contract claim that seeks damages as the principal form of relief. In the alternative, Dr. Finley contends that, even if an article 78 proceeding is a prerequisite for an employment contract claim, the decision to terminate her is not subject to review under article 78 because Commissioner of Hospitals Giacobbe, who made the decision to terminate her, lacked authority to do so as a matter of law. With respect to the dismissal of her tortious interference claim, Dr. Finley contends that under New York law even employees who are terminable at will may assert claims for tortious interference. With respect to the dismissal of her procedural due process claim, Dr. Finley contends that

New York state health law and Summit Park Hospital's bylaws create a protectible property interest in her position as Medical Director. Finally, Dr. Finley asserts that the district court abused its discretion in rejecting her motion for leave to amend.

We affirm the district court's dismissal of Dr. Finley's contract claim largely for the reasons stated in the district court's opinion. We affirm the dismissal of the due process claim for a reason not adduced by the district court, although we consider and find no error in the district court's analysis. We affirm the district court's dismissal of the tortious interference claim, but we do so on different grounds. Finally, we conclude that the district court did not abuse its discretion in refusing to allow the amendment of the complaint.

## BACKGROUND

A. *Events Leading To Dr. Finley's Termination.*

On November 14, 1991, defendant Giacobbe, the Rockland County Commissioner of Hospitals, offered Dr. Finley a position as the Medical Director and Chief Medical Officer of Summit Park Hospital/Rockland County Infirmary, a hospital and health care facility operated by Rockland County, New York (referred to herein as the "Hospital"). The Medical Director's primary duties include supervising the medical staff and determining whether to admit patients to the Hospital, as well as attending patients and periodically serving as the physician on call.

Dr. Finley accepted Giacobbe's offer and started work on December 3, 1991. In his letter offering the position, Giacobbe stipulated Dr. Finley's salary, vacation and other benefits. Consistent with Rockland County Civil Service Rule XVI(1)(a), Dr. Finley was hired for a probationary period of "not less than eight nor more than twenty-six weeks."[1] If the employing agency does not extend the employee's probation period at the end of eight weeks, the Civil Service Rules provide that the probation period ends automatically and the employee achieves "permanent" status. That probation period may be extended up to twenty-six weeks by written notice from the agency to the employee, and it is automatically extended one day for every day in excess of ten work days that a probationary employee is absent. Dr. Finley was absent for twelve days during the first eight weeks of her employment. The initial probationary period was thus automatically extended until January 29, 1992. On January 28, 1992, Giacobbe gave timely notice that Dr. Finley's probation period was being extended to a full twenty-six weeks, until June 12, 1992.[2]

On April 27, 1992, Giacobbe met with Dr. Finley and asked her to resign. When she refused, Giacobbe advised her that, if she did not resign, she would not be appointed to permanent staff status at the end of her probation period. Giacobbe declined to give Dr. Finley his reasons for that decision. In a memorandum to his file dated that same day, Giacobbe recorded that the "reason for nonappointment was not any grievous or erroneous problem," but rather that it "was an incapability [sic] as far as management styles were concerned."[3]

Shortly after this meeting, the office of the county attorney advised Giacobbe in writing that, as Commissioner of Hospitals, he had the legal authority to terminate the Medical Director. The letter from the county attorney's office invoked section C8.02 of the Rockland County Charter, which confers upon the Commissioner the "charge and supervision" of all county hospitals and "all the

---

1. The Hospital's constitution and bylaws are consistent with the Civil Service Rules, which state that all appointments to the hospital's staff "shall be considered probationary for a period of 26 weeks."

2. Until her reply brief, Dr. Finley did not dispute that she was a probationary employee at all relevant times. In her reply, she challenges Giacobbe's power to extend the probationary period on grounds that we reject in our discussion of her tortious interference claim at pages [20] to [22], *infra.*

3. Whether Dr. Finley's performance during the probation period was satisfactory is disputed but not relevant for purposes of our decision, since all claims alleging termination for improper reasons have been dismissed and that dismissal has not been appealed.

powers and duties conferred or imposed by the General Municipal Law or any other law," and cited a 1990 written opinion that the county attorney had rendered to the Rockland County Hospital Board of Governors concerning the scope of the Commissioner's authority.[4]

On May 7, 1992, after confirming his authority to terminate Dr. Finley, Giacobbe drafted a letter of termination. Giacobbe never presented Dr. Finley with that letter, however, because Dr. Finley, anticipating imminent termination, tendered a resignation letter to the Hospital on May 18, 1992.[5]

### B. *Procedural History.*

Dr. Finley's original complaint alleged seven causes of action. Her first four claims alleged that she was forced to resign, in violation of the Americans with Disabilities Act and the New York Human Rights Law, as a reprisal for admitting a patient with AIDS into the Hospital's long-term care facility. Her state claims were dismissed in an order and opinion published at 827 F.Supp. 215 (S.D.N.Y.1993); that order has not been challenged on appeal. Prior to this appeal, the parties stipulated to the voluntary dismissal with prejudice of the federal disability claims. The first four claims, therefore, are not before this Court, and nothing more will be said of them in this procedural history.

Dr. Finley's fifth cause of action alleged that she was dismissed in breach of an implied contract with the Hospital. Her sixth claim, pleaded against defendants Grant and Giacobbe in their individual capacities only, alleged that in terminating her they tortiously interfered with her employment arrangement with the Hospital. Dr. Finley's seventh and final claim, brought under 42 U.S.C. § 1983, alleged that all the defendants deprived her of procedural due process.

### 1. *Defendants' Motion to Dismiss.*

The defendants moved at the outset of discovery to dismiss the due process claim for failure to make a timely notice of claim upon the county as required by New York General Municipal Law §§ 50–e and 50–i. The defendants also moved to dismiss all claims pursuant to Rule 12(b)(6).

In its opinion, *Finley v. Giacobbe*, 827 F.Supp. 215 (S.D.N.Y.1993) (*"Finley I"*), the district court first rejected the defendants' motion to dismiss the § 1983 claim for failure to file a timely notice with the county, holding that New York's notice of claim requirement does not apply to actions under § 1983. *Id.* at 218–19. On the motion to dismiss the complaint for failure to state a claim, the district court conducted a detailed review of the pleadings and concluded that plaintiff had successfully pled each cause of action. *Id.* at 220–24.

### 2. *Defendants' Motion for Summary Judgment.*

Near the close of discovery, the defendants filed a motion for summary judgment on all remaining claims, and Dr. Finley filed a cross-motion for summary judgment on her breach of contract and due process claims, as well as a motion to amend her complaint to add a new defendant on her tortious interference claim. The district court's decision granting summary judgment to the defendants on all claims, *Finley v. Giacobbe*, 848 F.Supp. 1146 (S.D.N.Y.1994) (*"Finley II"*), is the subject of this appeal.

### DISCUSSION

■■■ This Court reviews a district court's grant of summary judgment *de novo*. *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 722 (2d Cir.1994),

---

4. This opinion determined that the New York Municipal Home Rule Law permits Rockland County to establish an administrative code that defines the Commissioner's duties and authority, even if inconsistent with state law. The opinion concluded that section C8.02 of the Rockland County Charter is a valid grant of authority to the Commissioner of Hospitals, and that the Commissioner has the authority to hire and fire medical staff.

5. Giacobbe evidently summoned Dr. Finley to his office on or around May 7, intending to give her the termination letter. Dr. Finley somehow learned that Giacobbe intended to terminate her, and acting on advice of counsel, did not answer Giacobbe's request that she meet with him in his office.

*cert. denied,* —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 856 (1995). On appeal "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The non-movant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper. *See Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988).

**A. Breach of Contract.**

In 1937, New York abolished the common law writs of certiorari, mandamus and prohibition, which required arcane pleading and often entailed "inconvenience, delay, expense and, in some cases, a denial of justice." N.Y.Civ.Prac.L. & R. § 7801, Practice Commentary C7801:1 at 26 (McKinney 1994). In place of those writs, in order to provide "an expeditious and essentially uniform procedure for judicial review of ... action (or inaction) by agencies and officers of state and local government," *id.,* New York created a special, quasi-judicial proceeding under article 78 of its Civil Practice Law and Rules. *See* N.Y.Civ.Prac.L. & R. §§ 7801–7806 (McKinney 1994). Article 78 proceedings are brought in New York Supreme Court and are subject to special rules of evidence and pleading, N.Y.Civ.Prac.L. & R. § 7804(b) (McKinney 1994), as well as a four-month statute of limitations. *Id.* § 217 (McKinney Supp.1995).

The district court held that *Austin v. Board of Higher Education,* 5 N.Y.2d 430, 440, 186 N.Y.S.2d 1,. 9, 158 N.E.2d 681, 686–87 (1959) "clearly established that a public employee seeking damages for his or her termination must first bring an article 78 proceeding to establish the wrongfulness of the termination," and therefore that Dr. Finley's breach of contract claim should have been presented first by way of an article 78 proceeding. *Finley II,* 848 F.Supp. at 1150. The district court explained that the "very purpose for requiring the article 78 proceeding articulated in *Austin* is to apply the shorter statute of limitations in order to prevent public employees from delaying in bringing damage actions." *Id.* Since Dr. Finley failed to bring her claim within the four-month statutory period, the court concluded that, "even if a federal court had the power to preside over an article 78 proceeding, we cannot do so here," and granted summary judgement to the defendants on the contract claim.[6] *Id.*

Dr. Finley advances two arguments to challenge the district court's determination that she should first have brought her claim in an article 78 proceeding: first, that a public employee's claim seeking damages as the principal form of relief—rather than reinstatement or back pay—is akin to a contract claim, an action at law that need not first be brought in an article 78 proceeding; second, that article 78 is inapplicable to her case, since, as a matter of law, the Rockland County Commissioner of Hospitals lacks authority to terminate the Medical Director. We address each argument separately.

**1. Article 78: Applicability to Contract Claims.**

The New York courts have held that article 78 is inapplicable to contract actions against the state government that seek damages as the principal remedy. *Golomb v. Board of Educ.,* 92 A.D.2d 256, 460 N.Y.S.2d 805 (2d Dep't 1983); *Automated Ticket Sys., Ltd. v. Quinn,* 70 A.D.2d 726,

---

**6.** The district court refused to dismiss the tortious interference claim on the same ground, however, because it was brought against defendants Giacobbe and Grant in their *individual* capacities, and because under New York law "damages against an officer in his or her individual capacity cannot be recovered in an article 78 proceeding." *Finley II,* 848 F.Supp. at 1151 (citation omitted). Dr. Finley's tortious interference claim against the officers thus survived the defendants' attack under article 78.

416 N.Y.S.2d 864 (3d Dep't 1979), *aff'd in relevant part,* 49 N.Y.2d 792, 426 N.Y.S.2d 731, 403 N.E.2d 454 (1980); *see also* N.Y.Civ. Prac.L. & R. § 7801, Practice Commentary C7801:6 at 39 (McKinney 1994) ("Rights based on a contract with a governmental body generally cannot be enforced by means of an Article 78 proceeding."). It is just as clear, however, that a successful article 78 proceeding for reinstatement is a prerequisite to a claim for damages by a discharged public employee. *Austin,* 5 N.Y.2d at 440, 186 N.Y.S.2d at 9, 158 N.E.2d at 686–87; *see also Meyers v. City of New York,* 208 A.D.2d 258, 265, 622 N.Y.S.2d 529, 534 (2d Dep't 1995) ("the appropriate vehicle for the plaintiff's challenge to the termination of his employment was a proceeding pursuant to CPLR article 78"); *Faillace v. Port Auth.,* 130 A.D.2d 34, 43, 517 N.Y.S.2d 941, 947 (1st Dep't) (breach of employment contract claim must be brought in "a CPLR [a]rticle 78 proceeding and not [in] an action at law"), *appeal denied,* 70 N.Y.2d 613, 524 N.Y.S.2d 432, 519 N.E.2d 343 (1987); *Clancy v. State,* 126 Misc.2d 292, 293, 481 N.Y.S.2d 943, 945 (Ct.Cl.1984) ("[B]reach of contract action for lost wages [against the state] may not be maintained since claimant has not obtained reinstatement to her former position via an Article 78 proceeding, a condition precedent to such an action against a public employer."). Even non-tenured or probationary employees must invoke article 78 to review dismissals that are allegedly arbitrary, capricious, or prohibited by statute or the constitution. *See Meyers,* 208 A.D.2d at 264–65, 622 N.Y.S.2d at 534 (action at law brought by probationary employee was "required to be brought in a proceeding pursuant to CPLR article 78 and [is] presently time-barred....").[7]

■ This seeming contradiction is reconciled by New York's view that public employment claims were historically based on *property* rather than *contract* principles:

> ... New York is heir to ancient common law principles that analyze public employment cases, including salary claims, as matters of property rather than contract law: An officer holds title to his office, and a tenured employee holds title to his position; therefore removal or dismissal in violation of law is analyzed in terms of ouster rather than defeasance of title or breach of contract, thus permitting recourse to proceedings under ... article 78 to obtain a reinstatement to the office or position and all its emoluments.

*State Div. of Human Rights on Complaint of Geraci v. New York State Dep't of Correctional Servs.,* 90 A.D.2d 51, 68–69 n. 8, 456 N.Y.S.2d 63, 75 n. 8 (2d Dep't 1982) (citations omitted).

Dr. Finley concedes that article 78 proceedings are proper where, as in *Austin,* a public employee contests an official agency decision to terminate her. But she casts her claim as one for breach of the "fundamental terms of her employment relationship" rather than as a challenge to an administrative decision to terminate her, and she points for support to *Gerber v. New York City Hous. Auth.,* 42 N.Y.2d 162, 397 N.Y.S.2d 608, 366 N.E.2d 268 (1977), and *Hussey v. Town of Oyster Bay,* 24 A.D.2d 570, 262 N.Y.S.2d 396 (2d Dep't 1965), among other cases. *Gerber* and *Hussey* permitted permanent employees under suspension to maintain actions at law for back salary withheld in contravention of their rights under the New York Civil Service Law. However, these cases are distinguishable from *Austin* (and from Dr. Finley's claim) because they involve suspension rather than termination.

■ The primacy of article 78 proceedings conserves public money by forcing a quick and efficient resolution of claims against state agencies. *Austin,* 5 N.Y.2d at 441, 186 N.Y.S.2d at 9–10, 158 N.E.2d at 686–87. Presumably to serve that end, the statute of limitations under article 78 is foreshortened to four months. N.Y.Civ.Prac.L. & R. § 217;

---

**7.** For other cases involving claims brought by probationary employees, see *Simpson v. Abate,* 213 A.D.2d 190, 625 N.Y.S.2d 2 (1st Dep't 1995); *Butler v. Abate,* 204 A.D.2d 171, 612 N.Y.S.2d 19 (1st Dep't 1994); *Johnson v. New York State Office of Mental Health,* 202 A.D.2d 585, 586, 609 N.Y.S.2d 270, 271 (2d Dep't 1994); *Jones v. Sielaff,* 189 A.D.2d 593, 593, 592 N.Y.S.2d 50, 50 (1st Dep't 1993); *Abbondandolo v. Lishansky,* 174 A.D.2d 738, 571 N.Y.S.2d 957 (2d Dep't 1991).

*see also Meyers,* 208 A.D.2d at 264–65, 622 N.Y.S.2d at 534 (dismissing breach of employment claim as time barred under article 78). Reinstatement is, of course, not at issue in back pay claims for wrongful suspension (such as in *Gerber* and *Hussey* ); moreover, agencies can limit the cost of a wrongful suspension claim simply by modulating the length of the suspension. This distinction is also significant under *Geraci,* historically which views illegal "removal or dismissal" in terms of "ouster rather than defeasance," and therefore in terms of property rather than contract. *Geraci,* 90 A.D.2d at 68 n. 8, 456 N.Y.S.2d at 75 n. 8. Wrongful suspension denies the employee salary during the period of employment and may therefore be viewed in terms of a contract right. Assuming, however, that Dr. Finley was ousted (disregarding for this purpose her resignation), all claims on appeal (including her back pay claim) depend on a right to reinstatement, an issue that, as *Austin* requires and the district court held, must be first addressed in an article 78 proceeding. The need for wrongful discharge claims to be corrected promptly by reinstatement, so that the accrual of damages can be arrested, is illustrated by this case: if Dr. Finley had prevailed in an article 78 proceeding, the case on appeal would not entail potential damages for the years of back pay claimed to be accruing since May 18, 1992; and if Dr. Finley had lost her article 78 proceeding, the present proceedings—lasting years—would have been obviated.

### 2. *Article 78 and Defendants' Allegedly Unauthorized Acts.*

Dr. Finley next argues that, under New York Public Health Law, the hospital's governing body has sole authority to terminate the Medical Director, and that Giacobbe's firing of her was an *ultra vires* act that could not be a final administrative determination amenable to review under article 78. Plaintiff relies on *Friedman v. State,* 24 N.Y.2d 528, 301 N.Y.S.2d 484, 249 N.E.2d 369 (1969), *appeal dismissed,* 397 U.S. 317, 90 S.Ct. 1121, 25 L.Ed.2d 337 (1970) for the proposi-

tion that unauthorized acts are not subject to review under article 78. In *Friedman,* a New York Supreme Court Justice who had been declared ousted by the Court of the Judiciary brought an action at law to recover back salary on the theory that he had never been legally removed because the Court of the Judiciary lacked jurisdiction to remove him. The Court of Appeals decided that Friedman was not required to prevail in an article 78 proceeding before suing at law, because the Court of the Judiciary had never been legally organized and because the claimant, for that reason never having been legally removed, had no duty or need to seek reinstatement. *Friedman,* 24 N.Y.2d at 537 n. 2, 301 N.Y.S.2d at 491 n. 2, 249 N.E.2d at 374 n. 2. Dr. Finley similarly contends that because Giacobbe lacked authority to terminate her, she was never legally removed and so had no duty or need to seek reinstatement before bringing an action at law.[8]

■ The impact of *Friedman* on *Austin* is an interesting question that we do not reach, because Dr. Finley's resignation furnishes an elementary ground for distinguishing both cases. Whether or not her resignation letter affects her claim for breach, it surely defeats her assertion that her employment *continues,* and that she therefore has no need to seek reinstatement under article 78. *See Girard v. Board of Educ.,* 168 A.D.2d 183, 184, 572 N.Y.S.2d 185, 185–86 (4th Dep't 1991) (article 78 proceeding dismissed "as moot by reason of petitioner's resignation," following which petitioner "no longer possessed any reemployment rights."). This analysis is unaffected even if we assume, as we do, that Dr. Finley resigned only in order to prevent any reference to discharge in her personnel file. *See Biegel v. Board of Educ.,* 211 A.D.2d 969, 970, 621 N.Y.S.2d 709, 710 (3d Dep't 1995) (notifying probationary employee of intent not to extend probation does not constitute duress, and subsequent resignation lawfully terminates employment and extinguishes duty to provide due process); *Gould v. Board of Educ.,* 184 A.D.2d 640, 584 N.Y.S.2d 910 (2d Dep't 1992) ("a resignation

---

8. In her briefing, Dr. Finley sometimes characterizes this issue (confusingly) in terms of wheth- er her termination lacked "finality."

submitted in response to being informed of dismissal is voluntary" and therefore absent misconduct an article 78 proceeding will not lie) (quoting *Girard,* 168 A.D.2d at 184, 572 N.Y.S.2d at 186), *rev'd on other grounds,* 81 N.Y.2d 446, 599 N.Y.S.2d 787, 616 N.E.2d 142 (1993).

Accordingly, we affirm the dismissal of the breach of contract claim.

## B. *Tortious Interference.*

 Dr. Finley's sixth cause of action alleges that defendants Grant and Giacobbe tortiously interfered with her employment contract with the Hospital. Under New York law, the elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a "third party" had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff. *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97, 99–100 (1956); *Kaminski v. United Parcel Serv.,* 120 A.D.2d 409, 412, 501 N.Y.S.2d 871, 873 (1st Dep't 1986).

The district court held first that, as an at will employee, Dr. Finley could prevail only if she established that she had an implied contract with the Hospital that limited the right of the Hospital to terminate her. Upon examining the record, the district court concluded that, even if the New York Public Health Law and state regulations vest in the Board of Governors sole authority to terminate the Medical Director, these provisions did not become a part of Dr. Finley's implied contract because she did not in fact rely on provisions of New York law in taking the job with the Hospital.[9] *Finley II,* 848 F.Supp. at 1154. In other words, the terms of Dr. Finley's employment did not restrict who could and could not fire her, and therefore her firing did not interfere with any contract right she may have had. The defendants' motion for summary judgment on the tor-

tious interference claim was therefore granted. We disagree with the district court's reasoning, but we affirm nevertheless on the ground that defendants Grant and Giacobbe were not "third parties" to the contract—an essential requirement of a claim for tortious interference.

### 1. *Existence of Implied Contract.*

 We agree with the district court's determination that no implied contract exists on which Dr. Finley may base her tortious interference claim. For purposes of a tortious interference claim, New York courts find an implied contract where the plaintiff shows: (a) that a writing limits the employer's common law right to terminate the employee without cause; (b) that plaintiff was aware of the writing when she accepted employment; and (c) that in reliance on the terms limiting her employer's right to terminate her, plaintiff was induced to leave her former employer or rejected other offers. *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 465–66, 457 N.Y.S.2d 193, 197, 443 N.E.2d 441, 445–46 (1982); *see also Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 334–35, 514 N.Y.S.2d 209, 212, 506 N.E.2d 919, 921–22 (1987) (plaintiff seeking to show implied employment contract bears "difficult pleading burden"). It is undisputed that Dr. Finley was unemployed when she accepted employment with the Hospital, was on "educational leave" from the Jersey City Medical Center after having recently been turned down for a fellowship in geriatric medicine, and had no other offers outstanding. Furthermore, Dr. Finley was not aware of the Hospital bylaws or New York health law until after she accepted the job. *Finley II,* 848 F.Supp. at 1153. Therefore, the district court correctly concluded that Dr. Finley could not establish the existence of an implied contract under New York law.

### 2. *Rights of At Will Employees.*

 We further agree with the district court that an employee serving purely

---

**9.** The court noted that Dr. Finley testified at her deposition that she did not receive a copy of state regulations or read the Hospital's bylaws until January or February 1992, well after she had accepted the position at Summit Park. *Finley II,*

848 F.Supp. at 1153. The court further observed that "[w]hile plaintiff appeared to have other job applications pending at the time she accepted the position [at the Hospital], none had come to fruition." *Id.*

at will, by definition, has no contractual right to avoid dismissal. However, New York law recognizes that the at will relationship entails certain limited rights, *see Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 851–52 (2d Cir.1985) (discussing contractual principles underlying New York's at will doctrine), including the right to maintain an action for tortious interference in certain limited situations. *Mansour v. Abrams,* 120 A.D.2d 933, 934, 502 N.Y.S.2d 877, 878 (4th Dep't 1986); *see also Agugliaro v. Brooks Bros., Inc.,* 802 F.Supp. 956, 963 (S.D.N.Y.1992) (at will employee who was terminated for an illegal reason may maintain action); Restatement (Second) of Torts, § 766, cmt. g (1979) (at will employee may maintain an action for tortious interference). Therefore, the district court erred in holding that Dr. Finley cannot maintain an action for tortious interference by virtue of her at will status.

### 3. *Third Party Requirement.*

We conclude that Dr. Finley's tortious interference claim was nevertheless properly dismissed on summary judgement because she cannot establish that defendants Giacobbe and Grant were third parties to the contract. The New York Court of Appeals held in *Wood Dolson Co.* that a plaintiff bringing a tortious interference claim must show that the defendants were *not parties to the contract.* 1 N.Y.2d at 120, 151 N.Y.S.2d at 5, 134 N.E.2d at 99–100. *See also Winicki v. City of Olean,* 203 A.D.2d 893, 894, 611 N.Y.S.2d 379, 380 (4th Dep't 1994) (only "a stranger to a contract" may be liable for tortious interference); *Artwear, Inc. v. Hughes,* 202 A.D.2d 76, 84, 615 N.Y.S.2d 689, 694 (1st Dep't 1994). This principle holds in the employment context as well. *Mansour,* 120 A.D.2d at 934, 502 N.Y.S.2d at 878 (plaintiff must show that a co-worker was a third party); *see also* Restatement (Second) of Torts, § 766 cmt. g (1979). In order to show that a defendant-employee is a "third party," a plaintiff must show that the defendant-employee has exceeded the bounds of his or her authority. *Kosson v. Algaze,* 203 A.D.2d 112, 113, 610 N.Y.S.2d 227, 228–29 (1st Dep't

1994) (tortious interference claim may not lie against agents of employer "absent a showing that they acted outside the scope of their authority"), *aff'd,* 84 N.Y.2d 1019, 622 N.Y.S.2d 674, 646 N.E.2d 1101 (1995); *see also Kartiganer Assocs., P.C. v. Town of New Windsor,* 108 A.D.2d 898, 899 485 N.Y.S.2d 782, 783 (2d Dep't), *appeal dismissed,* 65 N.Y.2d 925, (1985). Dr. Finley has simply failed to make this showing.

The evidence (particularly that concerning Dr. Finley's own behavior) leaves no question that Giacobbe, as Commissioner of Hospitals, had the authority to hire and fire the Medical Director. Giacobbe *hired* Dr. Finley. Dr. Finley was placed on the County's payroll and was employed by the County for several months. During this period Giacobbe had direct supervisory authority over Dr. Finley.[10] The record reflects that at no time did Dr. Finley challenge Giacobbe's supervisory powers; nor did the Rockland County Executive or the Board of Governors challenge the hiring or firing of Dr. Finley. The record demonstrates without question that Rockland County granted the Commissioner of Hospitals in general and Giacobbe in particular the power to hire and fire the Medical Director. In addition, there is no question of material fact that Grant, as the County Executive, was charged with overseeing all administrative functions of Rockland County, and therefore was a party to the County's employment of Finley.

Dr. Finley claims that General Municipal Law § 128 and New York Public Health Regulation § 405 *et seq.* vest the exclusive power to terminate medical personnel in the Board of Governors. *See* N.Y.Gen.Mun.Law § 128 (McKinney 1986); 10 N.Y.Comp.Codes R. & Regs. tit. 10, § 405 *et seq.* (West 1994). However, nothing in the General Municipal Law states that the powers of the Board of Governors cannot be delegated. New York Municipal Home Rule Law permits county charter provisions to be inconsistent with state law, and indeed to supersede state law. N.Y.Mun.Home Rule Law §§ 33 & 34 (McKinney 1986). While the Home Rule

---

**10.** Organizational charts placed Giacobbe in a supervisory position to Dr. Finley. Depositions of co-workers confirmed that Giacobbe was, for all intents and purposes, in charge at the Hospital.

Law is quite intricate, § 33(4)(a) clearly permits a county charter to "[a]ssign executive or administrative functions, powers and duties to elective or appointive offices."

Section C8.02 of the Rockland County Charter grants the Commissioner of Hospitals "charge and supervision of any hospitals [and] all the powers and duties conferred or imposed by the General Municipal Law or any other law." We therefore conclude that Rockland County Charter § C8.02 is a valid delegation of power to hire and fire hospital personnel (including the Medical Director) to the Commissioner of Hospitals.

## C. Procedural Due Process.

■ In order to establish a valid claim for deprivation of procedural due process under 42 U.S.C. § 1983, a plaintiff must show that a government entity deprived her of a right secured by law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). A plaintiff must have a property interest in a benefit that is "more than an abstract need or desire for it.... [She] must, instead, have a legitimate claim of entitlement to it" under state or federal law in order to state a § 1983 claim. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Dr. Finley's seventh cause of action asserts that the defendants deprived her of procedural due process in violation of § 1983 by terminating her without a hearing and without stating reasons for her dismissal. However, Dr. Finley cannot complain of procedural defects and omissions, because she resigned before her employer took all the steps necessary to fire her. An employee who resigns in anticipation of a discharge motivated by illegal reasons, such as discrimination or absence of cause, may encounter no such bar, but we need not decide such a case because it is not before us. *Cf. Molinar v. Western Elec. Co.*, 525 F.2d 521, 530 (1st Cir.1975) (applying New York law) (noting that resignation might be legally ineffective where pending discharge was motivated by bad faith). That said, where the alleged illegality is the employer's failure to afford the employee legally required procedural protections, and the employee voluntarily resigns before being discharged, the resignation effectively deprives the employer of the opportunity to comply with the procedural obligations and forecloses the employee from "seek[ing] the protections of her previous rights as an employee." *Girard v. Board of Educ.*, 168 A.D.2d 183, 186, 572 N.Y.S.2d 185, 187 (4th Dep't 1991).

■ Assuming, *arguendo*, that Dr. Finley was entitled to a hearing and to a statement of reasons for discharge, her resignation makes it impossible for her to demonstrate that she would not have received them prior to her actual firing. Before terminating her, Giacobbe might well have consulted counsel and been advised that she should be given reasons and afforded a hearing. Dr. Finley short-circuited the process by tendering her resignation. Once she did so and was no longer an employee, the Hospital had neither authority nor reason to conduct a hearing on her discharge and had no further occasion to state its reasons for doing so. Indeed, the Hospital lost its ability to discharge her. Her claim that she was not given procedural rights to which she was entitled accordingly must fail. *See Biegel v. Board of Educ.*, 211 A.D.2d 969, 970–71, 621 N.Y.S.2d 709, 710 (3d Dep't 1995). In *Biegel* a probationary teacher resigned to avoid any reference in her personnel file to a pending discharge. The Third Department denied her claim for reinstatement because the state law requiring notification "applies to ... probationary teachers whose services *are to be terminated by the employing school board*," not to those who resign, and therefore her "letter of resignation obviated [the school's] duty of notification." *Id.*, 211 A.D.2d at 970, 621 N.Y.S.2d at 710 (emphasis added). Dr. Finley's resignation thus "rendered unnecessary" any procedural review of the decision to terminate her, and obviated the "concomitant duty of notification" under state law. *Id.; see also Girard*, 168 A.D.2d at 185, 572 N.Y.S.2d at 186; *Smith v. Kunkel*, 152 A.D.2d 893, 894, 544 N.Y.S.2d 240, 242 (3d Dep't 1989) (after resigning, state employee not entitled to rights such as pre-termination hearing because "[h]aving relinquished his position, [he]

did not retain any constitutionally protected property interest in continued employment"). The same reasoning applies to Dr. Finley's argument that she could be fired only by the hospital board and not by Giacobbe. Had she not resigned, making the point moot, the board might well have taken action to ratify the dismissal. Indeed, there is substantial evidence it did so.

We also agree with the reasons for which the district court rejected Dr. Finley's contentions. The district court concluded that "plaintiff was still a probationary employee when she was terminated and thus cannot claim that her civil service status created a protectible right." *Finley II*, 848 F.Supp. at 1155. The court distinguished the cases cited by Dr. Finley on the ground that, *inter alia*, the plaintiffs were either protected by their civil service status or were parties to an employment contract limiting the grounds of discharge to "just cause." *Id.* In light of Dr. Finley's probationary status and short term of employment, the district court held that she "had neither an entitlement to her position nor an assurance that she would not lose her position absent due process.... [S]he could have been terminated at any time without any procedural protections." *Id.* Accordingly, the district court granted the defendants' motion for summary judgment on Dr. Finley's procedural due process claim.

Dr. Finley contends that New York Public Health Law § 2801–b and the Hospital's bylaws confer a property interest in medical staff membership. Section 2801–b makes it an "improper practice" for a public hospital to "curtail, terminate or diminish in any way a physician's ... professional privileges in a hospital without stating the reasons therefor...." N.Y.Pub.Health Law § 2801–b (McKinney 1993). The Hospital's bylaws provide that a staff physician whose hospital privileges are terminated or reduced must be afforded a hearing by the Hospital's executive committee. *See Northeast Ga. Radiological Assocs., P.C. v. Tidwell*, 670 F.2d 507, 510–11 (5th Cir. Unit B 1982) (state hospital's bylaws may form basis for actionable property right); *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 782–83 (2d Cir.) ("policies and practices" of state hospi-

tal over three year period may form basis for actionable property right), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991).

The New York Court of Appeals has held that § 2801–b requires a hospital to provide a *permanent* staff physician whose privileges are terminated with reasons that "relate to legitimate concerns of the hospital or nursing home." *Fried v. Straussman*, 41 N.Y.2d 376, 380, 393 N.Y.S.2d 334, 337, 361 N.E.2d 984, 987–88 (1977); *see also Fritz v. Huntington Hosp.*, 39 N.Y.2d 339, 384 N.Y.S.2d 92, 97–98, 348 N.E.2d 547, 552–54 (1976). However, these cases do not support the proposition that procedural protections extend to *probationary* employees, since both *Fried* and *Fritz* involved *permanent* medical staff. Likewise, both *Tidwell* and *Ezekwo*, on which Dr. Finley relies, are not on point. In *Tidwell*, the plaintiff-physician was tenured and had a contract that expressly incorporated hospital bylaws that guaranteed certain procedural protections. *Tidwell*, 670 F.2d at 511. In *Ezekwo*, the defendant hospital's policy and practice of promoting third-year residents to the position of chief resident created a property interest in a plaintiff who had worked for the hospital for three years. *Ezekwo*, 940 F.2d at 782–83.

Dr. Finley, however, was a probationary employee, and New York law regarding probationary employees is unequivocal:

> In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause*.

*S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988) (emphasis in original). Under New York law, "[i]t is well settled that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason." *Meyers v. City of New York*, 208 A.D.2d 258, 262, 622 N.Y.S.2d 529, 532 (2nd Dep't 1995); *see also York v. McGuire*, 63 N.Y.2d 760, 761, 480 N.Y.S.2d 320, 321, 469 N.E.2d 838, 839 (1984) (probationary employee may be terminated without

a hearing or statement of reasons); *Flood v. County of Suffolk*, 820 F.Supp. 709, 713 (E.D.N.Y.1993) (probationary employee had no property right in her position).[11]

We hold that since Dr. Finley voluntarily resigned, she cannot complain that she failed to receive all the procedural protections to which she may have been entitled as an employee, and we agree with the district court that she had no reasonable expectation in continued employment as a probationary employee, and therefore has no actionable property right on which to base her § 1983 claim.

### D. *Motion to Amend.*

Finally, Dr. Finley appeals the district court's denial of her motion for leave to amend her complaint to add Richard Maloney, the administrator of Patient Care Services of the Rockland County Department of Hospitals, as a defendant to the tortious interference claim. The district court denied her motion on the ground that it was granting summary judgment for the defendants, and held that the proposed amendment to that claim was therefore futile. While it is possible that Maloney was a third party to the contract, and therefore that Finley could have maintained a tortious interference claim against him, it was well within the district court's discretion to deny leave to add a new defendant after more than a year of litigation.[12]

### CONCLUSION

The judgment of the district court is affirmed.

---

**11.** As earlier noted, 2801–b and the Hospital's bylaws provide procedural protections only for permanent employees who are terminated by the Hospital. Dr. Finley was a probationary employee who resigned from the Hospital, and therefore is not afforded any procedural protections. *See Biegel v. Board of Educ.*, 211 A.D.2d 969, 970, 621 N.Y.S.2d 709, 710 (3d Dep't 1995) (holding that resignation obviated duty of notification because provision in Education Law applied only

to employees who were discharged by the school board).

**12.** Dr. Finley also sought to amend her due process claim to allege that defendant Giacobbe did not have power to extend her probationary period. Dr. Finley did not appeal this decision, however, so we do not consider it.